**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**HIGGINBOTHAM INSURANCE AGENCY, INC.,** **PLAINTIFF**

**vs.** **CAUSE No.: 3:25-CV-894-HTW-LGI**

**JOSHUA R. SMITH and ROSS & YERGER INSURANCE INC.** **DEFENDANTS**

---

**ORDER**

---

Before this Court are two motions: (1) Defendant Ross & Yerger Insurance Inc.'s Motion to Dismiss [Docket no. 7]; and (2) Defendant Joshua R. Smith's Motion to Dismiss [Docket no. 12], both filed under Federal Rule of Civil Procedure 12(b)(6)[1]. The two motions attack the same Complaint, features the same alleged course of conduct, and predictably, substantially overlap. The following joint order, therefore, promotes consistency and avoids duplicating the governing law. This Court, nevertheless, analyzes each claim and each Defendant separately where the parties' allegations or defenses differ. Having considered the pleadings, the parties' submissions, and the governing law, this Court grants the motions in part and denies them in part for the reasons stated *infra*.

## I. JURISDICTION

This Court has subject-matter jurisdiction over this lawsuit under 28 U.S.C.§ 1332(a)(1).[2] Higginbotham Insurance Agency, Inc. ("Higginbotham") is a Texas corporation with its principal

[1] Federal Rule of Civil Procedure 12(b)(6) permits a party to assert by motion the defense of "failure to state a claim upon which relief can be granted."

[2] Section 1332(a)(1) grants federal district courts original jurisdiction over civil actions in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and the dispute is between "citizens of different

place of business in Texas. Defendant Ross & Yerger Insurance, Inc. ("Ross & Yerger") is a Mississippi corporation with its principal place of business in Mississippi, and Defendant Joshua R. Smith ("Smith") is an individual domiciled in Mississippi. Higginbotham therefore is a citizen of a different state from each Defendant. The Complaint also alleges damages exceeding $280,000, which is more than $75,000, exclusive of interest and costs, thus satisfying the amount-in-controversy requirement for §1332's subject-matter grant of jurisdiction.

Venue is proper in this Southern District of Mississippi under 28 U.S.C. § 1391(b)(1) and (2)[3], because both Defendants reside in the Southern District of Mississippi, and a substantial part of the events giving rise to this action allegedly occurred here.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In December 2021, Higginbotham acquired Smith Insurance Agency, Inc. from Defendant Smith "for an amount exceeding $25,000,000" and offered Smith employment within the company. [Doc. 1, ¶ 8]. Smith thereafter executed an Employment and Non-Solicitation Agreement with Higginbotham, effective January 1, 2022. [Doc. 1, ¶ 9; Doc. 1-1 at 1]. The Employment Agreement (the "Agreement"), which is attached to and incorporated into the Complaint, contains two provisions central to Higginbotham's claims. [Doc. 1, ¶¶ 9–10 & n.1], to wit:

Section 8 addresses Higginbotham's proprietary information. Smith acknowledged that Higginbotham and its affiliates had "spent considerable time, effort and money to develop, acquire

States." 28 U.S.C. § 1332(a)(1). A corporation is a citizen of every state in which it is incorporated and the state where it maintains its principal place of business. *Id.* § 1332(c)(1).

[3] Section 1391(b) permits a civil action to be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located," or in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(1)–(2).

and implement [their] commercially valuable Proprietary Information." [Doc. 1-1 at 4]. He agreed that, both during and after his employment, he would not "disclose any Proprietary Information to any person or entity" outside the scope of his authorized duties or "use any Proprietary Information for the benefit of any person or entity other than…" Higginbotham or its subsidiaries. *Id.* The Agreement defines "Proprietary Information" to include information concerning current and prospective clients; client lists and their contents; policy-expiration information; underwriting criteria; advertising and marketing methods; business plans and methods; intellectual property and know-how; historical, budgeted, and projected financial information; and operational data. *Id.* It further characterizes this material as "unique and valuable information" that is "generally unknown to the public or others." *Id.* Upon Higginbotham's request, Smith also must safeguard and return all documents, electronic files, and other repositories containing Proprietary Information. *Id.*

Section 9 contains the non-solicitation covenant. During Smith's employment and for twenty-four months after he ended his employment with Higginbotham, Smith agreed that he would not, "directly or indirectly," whether acting individually or as another entity's employee or agent,

> solicit or otherwise quote rates to, accept or receive insurance business from, or write, bind or broker insurance for, any Account, any affiliate of any Account, or any other person or entity that is a policyholder or other customer or client of Employer or any of its affiliates . . . with whom or which Employee had any contact with or knowledge about by reason of Employee's employment with Employer.

[Doc. 1-1 at 5]. The covenant also prohibits Smith from suggesting, advising, or attempting to persuade a covered account or client to cancel or decline to renew a policy brokered by Higginbotham, or to "reduce, terminate, restrict or alter" its business relationship with Higginbotham. *Id.* Section 16 provides that the parties' rights and obligations "shall be interpreted,

construed and enforced in accordance with the laws of the State of Mississippi," except where federal law preempts state law. [Doc. 1-1 at 7].

The Complaint alleges that, on or about July 3, 2025, the then-forty-nine-year-old Smith informed Higginbotham's management that he would be "retiring from insurance work." [Doc. 1, ¶ 11]. His announcement raised concerns about who would assume responsibility for his book of business. *Id.* Smith consequently agreed to remain with Higginbotham until October 31, 2025, and to assist Higginbotham and its clients with the transition. *Id.* Shortly thereafter, some Higginbotham clients learned that Smith intended to join Ross & Yerger, and Smith confirmed to other Higginbotham employees that he would be joining Ross & Yerger as a "Business Consultant." [Doc. 1, ¶ 12]. Ross & Yerger allegedly competes with Higginbotham in the same insurance market. [Doc. 1, ¶ 13]. As discussion of Smith's plans increased, he unexpectedly moved his anticipated departure date from October 31 to October 2, 2025. [Doc. 1, ¶ 14].

Higginbotham terminated Smith's employment in August 2025, thereby triggering the Employment Agreement's two-year post-employment restriction. [Doc. 1, ¶ 15]. Two days later, Higginbotham reminded Smith of his obligations under both the proprietary-information and non-solicitation provisions. [Doc. 1, ¶ 16]. Higginbotham also notified Ross & Yerger of those contractual obligations. [Doc. 1, ¶ 17]. Smith allegedly joined Ross & Yerger as a Business Consultant immediately after his termination. [Doc. 1, ¶ 18].

The Complaint identifies two subsequent client departures. First, Ross & Yerger employees allegedly told Higginbotham employees that Smith was "bringing in a lot of new business for Ross & Yerger." [Doc. 1, ¶ 19]. In late October 2025, Higginbotham learned that a client previously serviced by Smith was terminating its relationship with Higginbotham and moving its insurance business to Ross & Yerger. [Doc. 1, ¶ 20]. In early November 2025, an email concerning a different

former Higginbotham client was sent to Smith's Higginbotham email address. [Doc. 1, ¶ 21]. Smith had serviced that client while employed by Higginbotham, and the client had moved its business to Ross & Yerger before the email arrived. *Id.* The Complaint alleges that client information, nevertheless, continued to be forwarded to Smith, "suggesting that Smith continued to service that client through Ross & Yerger." *Id.*

Based on these events, Higginbotham alleges, upon information and belief[4], that Smith "willfully and intentionally violated" the Employment Agreement by soliciting clients whom he previously had contacted and by sharing confidential proprietary information with Ross & Yerger. [Doc. 1, ¶ 22]. Higginbotham further alleges that even though Ross & Yerger had "knowledge and actual notice" of Smith's obligations, Ross & Yerger "encouraged and facilitated" the solicitation of former Higginbotham clients. [Doc. 1, ¶ 23].

According to the Complaint, Defendants' conduct caused several clients to terminate their relationships with Higginbotham and thereafter obtain insurance services from Ross & Yerger. [Doc. 1, ¶¶ 22–24]. Higginbotham estimates that it has lost more than $280,000 in business, as well as goodwill that cannot be adequately remedied through compensatory damages alone. [Doc. 1, ¶ 25].

The Complaint asserts six causes of action arising from this alleged misconduct: (1) breach of the Employment Agreement against Smith; (2) tortious interference with business relations against both Defendants; (3) tortious interference with the Employment Agreement against Ross & Yerger; (4) civil conspiracy against both Defendants; (5) breach of the implied covenant of good

---

[4] The phrase "upon information and belief" denotes allegations for which the relevant facts are not yet personally known to the pleader, but are expected to gain evidentiary support through investigation or discovery. Federal Rule of Civil Procedure 11(b)(3) recognizes that specifically identified factual contentions may be based on the reasonable expectation that they "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Such pleading is appropriate when the relevant facts are peculiarly within the opposing party's possession or control, provided other pleaded facts render the allegation plausible. *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730 (5th Cir. 2018).

faith and fair dealing against Smith; and (6) misappropriation under the Mississippi Uniform Trade Secrets Act ("MUTSA") against both Defendants.

## III. LEGAL STANDARD

A motion to dismiss under FRCP 12(b)(6) tests the legal sufficiency of the complaint; it does not resolve disputed facts or determine whether the plaintiff ultimately will prevail. *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020). The Court accepts the plaintiff's well-pleaded factual allegations as true, views those allegations in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The Court need not accept legal conclusions, conclusory allegations, or factual inferences unsupported by the allegations in the complaint. *Id.* at 678.

At the Rule 12(b)(6) stage, the Court evaluates the sufficiency of the allegations, not the admissibility of the evidence that may later be offered to prove them. A factual allegation is not disregarded merely because it recounts an out-of-court statement that might be subject to a hearsay objection at a later stage[5]. At this stage, the statement is not being admitted into evidence; the Court considers the allegation only in determining whether the complaint, accepted as true and viewed as a whole, states a plausible claim for relief. *Quantlab Technologies Ltd. (BVI) v. Godlevsky*, No. 4:09-CV-4039, 2012 WL 1596710, at *5 (S.D. Tex. May 4, 2012) (holding that an allegation based on a former employee's account of statements made by company executives was sufficient at the pleading stage, while recognizing that the statement might not constitute competent evidence at summary judgment or trial). The source, specificity, and context of the

[5] Federal Rule of Evidence 801(c) provides: "'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c).

alleged statement nevertheless bear on whether the inference drawn from it is reasonable rather than speculative. The plaintiff ultimately must prove its claims with admissible evidence.

Federal Rule of Civil Procedure 8(a)(2)[6] requires the complaint to provide a short and plain statement showing that the plaintiff is entitled to relief. The complaint need not contain detailed factual allegations, but it must plead more than labels, conclusions, or a formulaic recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The pleaded facts must permit the Court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678. A claim is plausible when its factual content raises the plaintiff's right to relief above the speculative level. *Twombly*, 550 U.S. at 555, 570. This inquiry is context-specific and requires the Court to consider the nature of the claim and the factual circumstances alleged. *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019).

When analyzing motions to dismiss, this Court may consider the Complaint, documents attached to it, and documents incorporated into it by reference. *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). Federal Rule of Civil Procedure 10(c)[7] provides that an exhibit attached to a pleading forms part of that pleading for all purposes. The Court therefore may consider the Employment Agreement attached to the Complaint without converting the motions into a motion for summary judgment.

---

[6] Federal Rule of Civil Procedure 8(a)(2) requires a pleading stating a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief

[7] Federal Rule of Civil Procedure 10(c) provides: "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

Some of Higginbotham's allegations are made "upon information and belief"[8]. That form of pleading is not automatically deficient, particularly when the relevant facts are within the opposing parties' knowledge or control. *Innova*, 892 F.3d at 730. Allegations made upon information and belief must still rest on factual content sufficient to support a reasonable inference of liability. *Id.* This Court, therefore, considers those allegations together with the specific events, communications, timing, and client departures described in the Complaint.

This Court's diversity jurisdiction requires a distinction between the law governing the procedure for deciding the motions and the law defining the claims themselves. Federal law supplies the pleading standard described above, while state substantive law determines the elements and scope of Higginbotham's causes of action. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Hanna*, 380 U.S. at 465. A federal court sitting in diversity applies the choice-of-law rules of the forum state—in this case, that of Mississippi. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941).

The Employment Agreement contains an express choice-of-law provision. Section 16 states:

**THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL BE INTERPRETED, CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF MISSISSIPPI, WITHOUT APPLICATION OF ITS CHOICE OF LAW PROVISIONS, EXCEPT WHERE PREEMPTED BY FEDERAL LAW.**

[Doc. 1-1 at 7](emphasis added).

Mississippi generally gives effect to an express agreement selecting the law that will govern a contract. *Cox v. Howard, Weil, Labouisse, Friedrichs, Inc.*, 619 So. 2d 908, 911 (Miss. 1993).

[8] See fn. 4.

Section 16 unambiguously selects Mississippi law to govern Higginbotham's and Smith's contractual rights and obligations. Mississippi courts generally enforce an express contractual choice-of-law provision. *Cox v. Howard, Weil, Labouisse, Friedrichs, Inc.*, 619 So. 2d 908, 911 (Miss. 1993). The phrase "without application of [Mississippi's] choice of law provisions" directs the Court to apply Mississippi substantive law without applying Mississippi's conflict-of-laws rules to refer the contractual dispute to another jurisdiction's law. The phrase "except where preempted by federal law" preserves the operation of controlling federal law if federal law displaces a particular state-law rule. No party identifies any federal statute or doctrine that preempts the Mississippi contract law applicable here.

Ross & Yerger is not a party to the Employment Agreement. The Complaint instead alleges that Ross & Yerger "is a third-party[9] to the Employment Agreement between Higginbotham and Smith." [Doc. 1, ¶ 44]. Section 16 therefore directly governs only the contractual rights and obligations of Higginbotham and Smith. *See Cypress Pharm., Inc. v. CRS Mgmt., Inc.*, 827 F. Supp. 2d 710, 723–24 (S.D. Miss. 2011) (applying a contractual choice-of-law provision to contract-based claims, while separately determining the law governing tort claims).

Mississippi law also governs the remaining tort and statutory claims asserted against Defendants. A choice-of-law analysis is necessary only when the laws of two interested states conflict. *Zurich Am. Ins. Co. v. Goodwin*, 920 So. 2d 427, 432–33 (Miss. 2006). No party identifies a conflicting rule of another state; all parties analyze these claims under Mississippi law. The Complaint also alleges that the conduct underlying the alleged interference, conspiracy, and

---

[9] Mississippi law permits a tortious-interference-with-contract claim only against a person or entity outside the contractual relationship. The alleged wrongdoer must be a "stranger" to the contract, as "[a] party to a contract cannot be charged with interfering with his own contract." *Cenac v. Murry*, 609 So. 2d 1257, 1269 (Miss. 1992); *see also Scruggs, Millette, Bozeman & Dent, P.A. v. Merkel & Cocke, P.A.*, 910 So. 2d 1093, 1098 n.3 (Miss. 2005) ("Only a party independent of the contract can cause another to breach a contract.").

misappropriation claims occurred principally in Mississippi and involved two Mississippi Defendants. [Doc. 1, ¶¶ 3, 12–24]. This Court accordingly applies Mississippi substantive law to each claim asserted in the Complaint.

## IV. DISCUSSION

The two motions challenge different sets of claims, but overlap in several respects. Ross & Yerger's Motion to Dismiss addresses the claims asserted against Ross & Yerger: Count II for tortious interference with business relations; Count III for tortious interference with contract, Count IV for civil conspiracy; and Count VI for misappropriation of trade secrets. Ross & Yerger also argues that the entire Complaint constitutes an impermissible shotgun pleading. [Docs. 7–8].

Smith's Motion to Dismiss addresses the claims asserted against Smith: Count I for breach of contract; Count II for tortious interference with business relations; Count IV for civil conspiracy, Count V for breach of the implied covenant of good faith and fair dealing; and Count VI for misappropriation of trade secrets. Smith expressly adopts and incorporates the arguments presented in Ross &Yerger's motion. [Doc. 13 at 4].

Counts II, IV, and VI therefore are challenged in both motions. The Court discusses the governing law for those overlapping claims in its analysis of Ross & Yerger's Motion and then separately determines whether the allegations against Smith survive. Count III applies only to Ross & Yerger, while Counts I and V apply only to Smith.

### A. Ross & Yerger Insurance Inc.'s Motion to Dismiss [Doc. 7]

#### 1. Alleged "Shotgun Pleading"

Ross & Yerger first argues that the Complaint should be dismissed in its entirety because each count incorporates the preceding allegations and the request for relief does not allocate every requested remedy between the two Defendants. A complaint against multiple defendants must

identify with reasonable clarity the claims asserted against each defendant and the conduct allegedly supporting those claims. *Jones v. Grapeland Independent School District*, No. 24-40194, 2024 WL 4490604, at *1 n.1 (5th Cir. Oct. 15, 2024) (unpublished).

The Complaint satisfies that requirement. It is eleven pages long and presents a single chronology involving only two Defendants. Count III, tortious interference with contract, expressly identifies Ross & Yerger as the Defendant against whom that claim is asserted. [Doc. 1, ¶¶ 43–48]. Count II, tortious interference with business relation, and Count IV, misappropriation of trade secrets, expressly refer to both Defendants. [*Id.*, ¶¶ 35–42, 49–54]. Although the heading of Count VI does not identify the Defendants separately, the allegations state that Smith disclosed Higginbotham's information to Ross & Yerger and that neither Smith nor Ross & Yerger had authority to use it. [*Id.*, ¶¶ 63–64]. Ross & Yerger's own motion recognizes and addresses Count VI as a claim asserted against it. [Doc. 8 at 4, 14–16].

The factual allegations also identify the conduct attributed to Ross & Yerger. Higginbotham alleges that it notified Ross & Yerger of Smith's contractual obligations, that Ross & Yerger employed Smith immediately after his termination, that Ross & Yerger encouraged or facilitated Smith's solicitation of former Higginbotham clients, and that Ross & Yerger received business and confidential information through Smith. [Doc. 1, ¶¶ 17–24]. These allegations provide Ross & Yerger with fair notice of the claims asserted against it and the conduct underlying those claims.

Ross & Yerger's motion to dismiss is denied to the extent it seeks dismissal of the entire Complaint as an impermissible shotgun pleading

**2. Count II: Tortious interference with business relations**

Under Mississippi law, tortious interference with business relations requires: (1) intentional and willful acts; (2) calculated to cause damage to the plaintiff's lawful business; (3) undertaken with the unlawful purpose of causing damage and loss, without right or justifiable cause; and (4) resulting in actual damage and loss. *MBF Corp. v. Century Business Communications, Inc.*, 663 So. 2d 595, 598 (Miss. 1995). The malice required for this claim means the intentional commission of a harmful act without legal justification or excuse. *Cenac v. Murry*, 609 So. 2d 1257, 1268–69 (Miss. 1992).

Higginbotham alleges that Ross & Yerger solicited "certain" clients whom Smith previously had made contact and did so despite actual notice of Smith's contractual restrictions. [Doc. 1, ¶¶ 37–39]. The Complaint also describes two clients' alleged departures. One client formerly serviced by Smith moved its insurance business from Higginbotham to Ross & Yerger in late October 2025. [*Id.*, ¶ 20]. A second client formerly serviced by Smith had moved to Ross & Yerger before an email concerning that client was sent to Smith's former Higginbotham account in early November 2025. [*Id.*, ¶ 21].

These allegations identify a limited period and describe the clients' relationships with Smith, but they do not identify either client, describe either account, state the nature or duration of the pertinent business relationship, or specify the business allegedly lost from each relationship. Courts applying Mississippi law have dismissed interference claims when the complaint fails to identify the customer or business relationship allegedly affected. See *Pie Development, L.L.C. v. Pie Insurance Holdings, Inc.*, No. 1:20-CV-224-HSO-JCG, 2021 WL 3206043, at *10 (S.D. Miss. July 28, 2021), *aff'd*, No. 21-60593, 2023 WL 2707184, at *2 (5th Cir. Mar. 30, 2023) (unpublished).

This Court does not hold that Higginbotham must disclose confidential client names in an unrestricted public filing. Higginbotham may seek leave to file identifying information under seal or provide sufficiently particular anonymized descriptions. The present Complaint, however, does not identify the relevant business relationships with enough specificity to give Ross & Yerger fair notice of the relationships at issue and the conduct allegedly affecting each one. Ross & Yerger's motion to dismiss is granted as to Count II, tortious interference with business relations. This Court, however, grants Higginbotham leave to amend its claim and filed a sealed Amended Complaint within fourteen (14) days of this Order, if it so chooses. This Court, upon receiving such, with any challenge from Defendant, will then continue its 12(b)(6) analysis. Should Higginbotham choose not to amend, this Court's dismissal will stand.

**3. Count III: Tortious interference with contract**

A claim for tortious interference with contract requires allegations that: (1) the defendant's acts were intentional and willful; (2) the acts were calculated to damage the plaintiff's lawful business; (3) the acts were undertaken for the unlawful purpose of causing damage and loss, without right or justifiable cause; and (4) actual damage and loss resulted. *Rex Distributing Co. v. Anheuser-Busch, LLC*, 271 So. 3d 445, 452–55 (Miss. 2019). The alleged wrongdoer also must be a stranger to the contract. *Cenac*, 609 So. 2d at 1269.

Count III identifies the particular contract allegedly affected: the January 2022 Employment Agreement between Higginbotham and Smith. The Complaint expressly alleges that Ross & Yerger is "a third-party to the Employment Agreement." [Doc. 1, ¶ 44]. It also alleges that Higginbotham notified Ross & Yerger of Smith's non-solicitation and confidentiality obligations before the challenged conduct occurred. [*Id.*, ¶ 17].

Despite that notice, as alleged in the Complaint, Ross & Yerger allegedly employed Smith immediately after his termination and "encouraged and facilitated" his solicitation of clients whom he had serviced for Higginbotham. [*Id.*, ¶¶ 18, 23]. Ross & Yerger employees allegedly stated that Smith was "bringing in a lot of new business," and two clients formerly serviced by Smith moved their business to Ross & Yerger shortly after when Smith joined the company. [*Id.*, ¶¶ 19–21]. Higginbotham alleges that Ross & Yerger's conduct caused Smith to violate the Employment Agreement and resulted in more than $280,000 in losses. [*Id.*, ¶¶ 45–47].

Ross & Yerger argues that the Complaint attributes the alleged solicitation principally to Smith rather than identifying a particular act performed by Ross & Yerger. Mississippi law does not require every participant to perform the ultimate act of interference. A party that commands, directs, advises, encourages, aids, or abets another's tortious conduct may be held jointly liable. *Rex Distributing*, 271 So. 3d at 453 (¶ 27). The required intent may also be inferred when a defendant knows of a contract and intentionally performs an unjustified act that is certain or substantially certain to interfere with its performance. *Id.* at 454 (¶ 30).

The allegations of the Complaint that: Ross & Yerger had notice of the Employment Agreement; its immediate employment of Smith; Ross & Yerger encouraged Smith's pursuit of former clients; alleged receipt of business from those clients; and alleged use of information supplied through Smith, together permit a reasonable inference of knowing interference. Discovery may show that Ross & Yerger engaged only in lawful competition, or otherwise acted with justification. Those factual questions, though, cannot be resolved from the Complaint. Ross & Yerger's motion to dismiss is denied as to Count III.

**4. Count IV: Civil Conspiracy**

Under Mississippi law, a civil conspiracy requires "(1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, and (4) damages to the plaintiff as a proximate result." *Rex Distributing*, 271 So. 3d at 455. The agreement need not be formal or express. It may be implied from the alleged conspirators' course of conduct and proved through circumstantial evidence. *Bradley v. Kelley Bros. Contractors, Inc.*, 117 So. 3d 331, 339 (Miss. Ct. App. 2013); *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 520 (5th Cir. 2018). The circumstances still must support a reasonable inference that the alleged conspirators reached a meeting of the minds concerning the object or course of action. *Gallagher Bassett Services, Inc. v. Jeffcoat*, 887 So. 2d 777, 786–87 (Miss. 2004). A civil-conspiracy claim also depends on an independently actionable underlying wrong. *Sharkey v. Barber*, 188 So. 3d 1245, 1247 (Miss. Ct. App. 2016).

As a defense, Ross & Yerger invokes the intracorporate-conspiracy doctrine. This doctrine treats a corporation and an employee acting within the course and scope of his employment as one legal actor. The employee's conduct is attributed to the corporation, and the corporation cannot conspire with itself. *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952); *Frye v. American General Finance, Inc.*, 307 F. Supp. 2d 836, 843–44 (S.D. Miss. 2004); *Cooper v. Drexel Chemical Co.*, 949 F. Supp. 1275, 1285 (N.D. Miss. 1996). The doctrine, however, does not foreclose a claim based on an agreement formed before the individual became the corporation's employee, or a claim based on conduct outside the scope of the employment relationship. *Frye*, 307 F. Supp. 2d at 844.

The Complaint *sub judice* alleges that clients learned of Smith's plan to join Ross & Yerger while Smith remained employed by Higginbotham; that Smith confirmed that plan; that these

discussions concerning the move continued; and that Smith accelerated his departure. [Doc. 1, ¶¶ 11–15]. These allegations contemplate coordination between Smith and Ross Yerger before Smith began working for Ross & Yerger. The present record therefore does not permit the Court to conclude that the intracorporate-conspiracy doctrine necessarily bars Count IV. See *Wesley Health Systems, LLC v. Forrest County Board of Supervisors*, No. 2:12-CV-59-KS-MTP, 2012 WL 4799506, at *6 (S.D. Miss. Oct. 9, 2012).

There's more. While Smith remained employed by Higginbotham, he represented that he was retiring, agreed to assist with a transition through October 31, 2025, planned to join Ross & Yerger, and then accelerated his departure. [Doc. 1, ¶¶ 11–15]. Higginbotham notified Ross & Yerger of Smith's contractual restrictions before Ross & Yerger employed him. [*Id.*, ¶¶ 16–18]. Ross & Yerger then allegedly "encouraged and facilitated" Smith's solicitation of the clients he had serviced for Higginbotham, and Defendants allegedly solicited those clients jointly despite their knowledge of the Employment Agreement. [*Id.*, ¶¶ 22–24, 37–39, 50–51]. Shortly afterward, Ross & Yerger employees stated that Smith was bringing the company substantial new business. Supposedly, a former Higginbotham client moved its insurance business to Ross & Yerger, and Smith allegedly continued servicing another former client after that client made the same move. [*Id.*, ¶¶ 19–21].

The sum of these allegations do more than describe a new employment relationship, a shared commercial interest, or parallel conduct. Taken together and viewed in Higginbotham's favor, the alleged pre-employment coordination, Ross & Yerger's advance notice of Smith's restrictions, its alleged encouragement and facilitation of conduct prohibited by those restrictions, Defendants' joint solicitation, and the resulting transfer of client business all permit a reasonable inference of a tacit agreement to interfere with the Employment Agreement. The Complaint also

alleges overt acts in furtherance of that agreement and resulting damages, and Count III supplies an independently actionable underlying wrong. Direct evidence of an express agreement is not required at the pleading stage. Whether discovery will substantiate the inferred agreement is a question for later proceedings. Ross & Yerger's motion is denied as to Count IV

**5. Count VI: Misappropriation of Trade Secrets**

The Mississippi Uniform Trade Secrets Act ("MUTSA") protects information that derives actual or potential independent economic value from not being generally known or readily ascertainable by proper means and that is subject to reasonable efforts to maintain its secrecy. *See* Miss. Code Ann. § 75-26-3(d)[10]. Misappropriation includes the unauthorized disclosure or use of protected information by a person who knew or had reason to know that the information was acquired under circumstances creating a duty to maintain its secrecy or was derived from a person who owed such a duty. *Id.* § 75-26-3(b).

The Complaint and incorporated Employment Agreement identify the categories of information which under the statute could be misappropriated. Those categories include client lists and their contents, policy-expiration information, underwriting criteria, marketing methods, business plans and methods, financial information, and operational data. [Doc. 1-1 at 4]. The Agreement states that Higginbotham expended substantial time, effort, and money developing the information; that the information is commercially valuable and generally unknown to the public; and that Smith must preserve its confidentiality during and after his employment. *Id.* These allegations plausibly address the information's subject matter, economic value, secrecy, and the

[10] Mississippi Code Annotated § 75-26-3(d) defines a "trade secret" as information—including a formula, pattern, compilation, program, device, method, technique, or process—that "(i) [d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (ii) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Section 75-26-3(b) defines "misappropriation" to include specified unauthorized acquisition, disclosure, or use of another's trade secret.

measures Higginbotham employed to protect it. See *Fred's Stores of Mississippi, Inc. v. M & H Drugs, Inc.*, 725 So. 2d 902, 908–11 (Miss. 1998).

The Complaint also alleges that Higginbotham notified Ross & Yerger of Smith's continuing confidentiality obligations. [Doc. 1, ¶ 17]. Ross & Yerger nevertheless allegedly encouraged Smith's solicitation of former clients, received confidential client information from him, and used that information without Higginbotham's authorization. [*Id.*, ¶¶ 22–24, 63–64]. The subsequent movement of Smith's former clients to Ross & Yerger and the email suggesting that Smith continued servicing one of those clients provide circumstantial support for the alleged use. [*Id.*, ¶¶ 20–21].

*Pie Development* does not require dismissal here. The plaintiff in that case failed to plead reasonable secrecy measures because the nondisclosure agreement was executed by a different entity; the agreement did not bind the litigants; and it did not cover the alleged oral disclosure. 2021 WL 3206043, at *8–9, *aff'd*, 2023 WL 2707184, at *2. In the matter *sub judice*, Higginbotham is the alleged owner of the information; Smith signed the confidentiality agreement; the agreement expressly covers customer and client information "in whatever form"; and the obligation continues after Smith's employment. [Doc. 1-1 at 4].

Higginbotham ultimately must identify the allegedly misappropriated information with greater precision and establish that it was not public or readily ascertainable. At this stage, the Complaint identifies the asserted information and connects Ross & Yerger's alleged knowledge and use to the movement of client business.

This Court grants Ross & Yerger's motion as to Count VI and dismisses the MUTSA claim against it without prejudice. This Court, however, grants Higginbotham leave to amend its claim, if it so chooses, to identify the allegedly protected information and the facts supporting Ross &

Yerger's alleged acquisition, disclosure, or use. Recognizing Higginbotham's assertion that the alleged misappropriated material is a trade secret, should Higginbotham choose to amend the Complaint, it may file such under seal.

### B. Joshua R. Smith's Motion to Dismiss [Doc. 12]

Smith adopts the arguments asserted in Ross & Yerger's motion, and separately challenges the contract-based claims asserted against him. [Doc. 13 at 4–11].

#### 1. Smith's adopted shotgun-pleading argument

Smith's request to dismiss the entire Complaint as an impermissible shotgun pleading is denied. The claims asserted against Smith are readily identifiable. Counts I and V expressly name Smith, while Counts II and IV expressly apply to both Defendants. [Doc. 1, ¶¶ 26–42, 49–59]. Count VI alleges that Smith obtained Higginbotham's confidential information through his employment, shared it with Ross & Yerger, and used it without authorization. [*Id.*, ¶¶ 61–65].

The factual allegations also distinguish Smith's conduct from the conduct attributed to Ross & Yerger. The Complaint alleges that Smith signed the Employment Agreement, obtained access to confidential information, announced his retirement while planning to join a competitor, shortened his anticipated transition period, received a reminder of his continuing obligations, and then solicited or serviced clients whom he had previously served at Higginbotham. [*Id.*, ¶¶ 8–22]. These allegations give Smith fair notice of the claims asserted against him; thus, this Court is not persuaded that Smith's shotgun-pleading argument has merit.

#### 2. Count I: Breach of contract

Under Mississippi law, a breach-of-contract claim requires proof of a valid and binding contract and a breach of that contract. *Gulf Coast Hospice LLC v. LHC Group Inc.*, 273 So. 3d 721, 743 (Miss. 2019); *Business Communications, Inc. v. Banks*, 90 So. 3d 1221, 1224–25 (Miss.

2012). Actual damages affect the available remedy, but they are not necessary to establish that a breach occurred. *Banks*, 90 So. 3d at 1224–25.

Higginbotham attaches the Employment Agreement and identifies the obligations Smith allegedly violated. Section 9 prohibits Smith, for twenty-four months after being terminated by Higginbotham, from directly or indirectly soliciting, quoting, accepting, receiving, writing, binding, or brokering insurance business for covered Higginbotham clients with whom Smith had contact, or about whom he acquired knowledge through his employment. [Doc. 1-1 at 5]. Section 8 prohibits Smith from disclosing Higginbotham's Proprietary Information, or using it for another person's benefit during or after his employment. [*Id.* at 4].

The Complaint alleges that Smith joined Ross & Yerger immediately after his termination, brought substantial new business to that competitor, participated in moving former Higginbotham clients to Ross & Yerger, and continued servicing at least one former client after the transfer. [Doc. 1, ¶¶ 18–22]. It further alleges that Smith shared confidential client information with Ross & Yerger and that his conduct caused Higginbotham to lose more than $280,000 and valuable goodwill. [*Id.*, ¶¶ 22, 25, 30–33].

Smith emphasizes that the Complaint does not quote a specific solicitation or name the clients involved. The absence of a quoted solicitation does not defeat the contract claim. Section 9 reaches beyond an express request for business and prohibits Smith from indirectly accepting or receiving insurance business and writing, binding, or brokering insurance for covered clients. [Doc. 1-1 at 5]. The alleged client transfers and continued servicing plausibly fall within that language.

Whether the clients satisfy the Agreement's definitions, whether Smith performed the prohibited acts, and whether the restriction is enforceable in its full scope remain questions for

later proceedings. The Complaint sufficiently identifies the contract, the provisions allegedly breached, the conduct constituting the breach, and the resulting injury. Smith's motion is denied as to Count I.

**2. Count II: Tortious interference with business relations**

The Complaint alleges that Smith solicited "certain" former clients and caused those clients to move their business to Ross & Yerger. [Doc. 1, ¶¶ 22, 29–30, 37–40]. It does not describe the nature or duration of those business relationships, identify a particular wrongful act directed toward either client, or connect specific conduct by Smith to a particular lost expectancy.

The allegations suffice for Count I at this stage because the attached Employment Agreement identifies Smith's contractual obligations and prohibits conduct extending beyond direct solicitation. Count II requires additional facts identifying a business relationship or expectancy and Smith's intentional and unjustified interference with it. For the reasons stated in the Court's analysis of Ross & Yerger's motion, the Court grants Smith's motion as to Count II and dismisses that claim without prejudice, subject to Higginbotham's opportunity to amend.

**3. Count IV: Civil Conspiracy**

Smith adopts Ross & Yerger's arguments against Count IV, including its reliance on the intracorporate-conspiracy doctrine. For the reasons stated above, the Complaint plausibly alleges that Smith and Ross & Yerger began coordinating before Smith became a Ross & Yerger employee. The Court therefore cannot conclude from the pleadings that the doctrine bars the claim.

The alleged chronology also permits a reasonable inference that Smith knowingly joined the common plan. Smith allegedly planned his move to Ross & Yerger while still employed by Higginbotham, shortened the transition period after clients learned of that plan, received a specific reminder of his contractual obligations, joined Ross & Yerger immediately after his termination,

and then participated with Ross & Yerger in soliciting and servicing former Higginbotham clients. [Doc. 1, ¶¶ 11–24, 50–51]. Mississippi law permits the agreement element to be inferred from this course of conduct. *Bradley*, 117 So. 3d at 339; *Midwest Feeders*, 886 F.3d at 520. At this stage, Higginbotham need not produce direct evidence of an express agreement. The alleged circumstances make the existence of a tacit agreement plausible, and discovery will test that inference. Smith's motion is denied as to Count IV.

**4. Count V: Breach of the implied covenant of good faith and fair dealing**

Mississippi law implies a covenant of good faith and fair dealing in every contract. *Cenac*, 609 So. 2d at 1272. Good faith requires faithfulness to the parties' agreed purpose and conduct consistent with the other party's justified expectations. *Id.* at 1272–73. Bad faith requires more than negligence or poor judgment, and a party does not act in bad faith merely by exercising a right expressly granted by the contract. *Gulf Coast Hospice*, 273 So. 3d at 744–45.

Count V alleges more than an accidental or technical breach. According to the Complaint, Smith sold his agency to Higginbotham for more than $25 million, accepted employment and post-employment restrictions in connection with that transaction, represented that he was retiring, and agreed to remain temporarily to assist with the transition of his client relationships. [Doc. 1, ¶¶ 8, 11]. He allegedly planned to join Ross & Yerger while still employed by Higginbotham, shortened the transition period, received a specific reminder of his continuing obligations, and immediately used his position and Higginbotham's information to move or service former clients through a competitor. [*Id.*, ¶¶ 12–22, 56–57].

If proven, that conduct would constitute a deliberate effort to frustrate the client-protection purpose underlying the Employment Agreement and would be inconsistent with Higginbotham's justified contractual expectations. Count V remains contractual in nature and does not authorize

duplicative recovery for the same injury. The extent to which it provides relief beyond Count I may be determined after the factual record is developed. Smith's motion to dismiss, thus, is denied as to Count V.

**5. Count VI: Misappropriation of trade secrets**

The Complaint adequately identifies the categories of information allegedly protected as trade secrets and the measures Higginbotham allegedly employed to preserve the information's confidentiality, including the continuing nondisclosure, restricted-use, safeguarding, and return-of-materials obligations imposed by the Employment Agreement. For the reasons stated in the Court's analysis of Ross & Yerger's Motion to Dismiss, these allegations sufficiently plead reasonable efforts to maintain secrecy. The allegations against Smith, however, require separate consideration.

Smith obtained the information through his employment and expressly agreed not to disclose it or use it for anyone other than Higginbotham. [Doc. 1-1 at 4]. "Two days after Smith's termination, Higginbotham reminded Smith of his obligations under the proprietary-information and non-solicitation clauses of the Employment Agreement." [Doc. 1, ¶ 16]. Higginbotham alleges that Smith nevertheless disclosed confidential client information to Ross & Yerger and used that information to solicit or service former Higginbotham accounts. [*Id.*, ¶¶ 22, 30, 63–64]. These allegations—including the transfer of former Higginbotham clients to Ross & Yerger after Smith joined the firm, and an email allegedly showing that Smith continued servicing one such client—support a reasonable inference that Smith used Higginbotham's confidential client information. [*Id.*, ¶¶ 20–21].

Discovery may establish that the information was publicly available, readily ascertainable, insufficiently protected, or never used by Smith. Those factual questions cannot be resolved from

the Complaint. Higginbotham plausibly alleges that Smith disclosed or used identified categories of confidential information despite his continuing duty to preserve their secrecy. Smith's motion is denied as to Count VI.

## V. LEAVE TO AMEND

The deficiencies in Counts II and VI concern missing factual detail and may be curable. Higginbotham has filed only one complaint, and the Court has not previously directed Higginbotham to cure these deficiencies. Nothing in the present record establishes undue delay, bad faith, repeated failure to cure, undue prejudice, or futility. Federal Rule of Civil Procedure 15(a)(2)[7] directs courts to "freely give leave when justice so requires," and the Fifth Circuit recognizes a strong presumption favoring amendment. *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590–91 (5th Cir. 2016). Dismissal without an opportunity to amend generally is appropriate only when the defect is incurable, or the plaintiff has failed to cure the defect after repeated opportunities. *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000).

Higginbotham may file an amended complaint within fourteen days of this Order. Any amended complaint must contain every claim Higginbotham intends to pursue and must identify with greater specificity: (1) the business relationships and expectancies supporting Count II; and (2) the information claimed as a trade secret and each Defendant's alleged acquisition, disclosure, or use of that information for Count VI.

The Court further finds that requiring Higginbotham to place client identities, policy information, expiration data, underwriting information, or other specifically alleged trade secrets in an unrestricted public filing could disclose the information the action seeks to protect. That interest supplies a clear and compelling reason for limited sealing. The public's common-law right of access nevertheless requires the Court to employ the narrowest means that will protect the

information. *Binh Hoa Le v. Exeter Finance Corp.*, 990 F.3d 410, 417–20 (5th Cir. 2021). Local Uniform Civil Rule 79(b) likewise requires particularized findings and an order narrowly tailored to the reasons supporting sealing.

## VI. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED AND ADJUDGED** that Defendant Ross & Yerger Insurance Inc.'s Motion to Dismiss [Docket no. 7] and Defendant Joshua R. Smith's Motion to Dismiss [Docket no. 12] are **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Count II (tortious interference with business relations) is DISMISSED WITHOUT PREJUDICE as to both Defendants;
2. Ross & Yerger's motion is DENIED as to Count IV (civil conspiracy), and Smith's motion is DENIED as to Count IV;
3. Ross & Yerger's motion is GRANTED as to Count VI (misappropriation under the Mississippi Uniform Trade Secrets Act), and Count VI is DISMISSED WITHOUT PREJUDICE as to Ross & Yerger. Smith's motion is DENIED as to Count VI, and that claim remains pending against Smith;
4. Ross & Yerger's motion is DENIED as to Count III (tortious interference with contract), and its request to dismiss the Complaint as an impermissible shotgun pleading is DENIED;
5. Smith's motion is DENIED as to Count I (breach of contract) and Count V (breach of the implied covenant of good faith and fair dealing), and his request to dismiss the Complaint as an impermissible shotgun pleading is DENIED; and

6. Higginbotham may file an amended complaint within fourteen (14) days of this Order. Any amended complaint must contain every claim Higginbotham intends to pursue and may amend Count II as to both Defendants and Count VI as to Ross & Yerger.

**SO ORDERED this the 28th day of September, 2026.**

**/s/HENRY T. WINGATE**
**UNITED STATES DISTRICT COURT JUDGE**